IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Emiley Reed,<br><br>Plaintiff,<br><br>v.<br><br>GrandSouth Bank, Robert Phillips, Craig McAdams and Alan Uram individually<br><br>Defendants. | C/A NO: 2:21-cv-00348-MBS-MGB |

**PLAINTIFF'S MEMORANDUM FOR PARTIAL SUMMARY JUDGEMENT AND EQUITABLE TOLLING**

Plaintiff, Emiley Reed ("Plaintiff" or "Ms. Reed") by and through undersigned counsel files this memorandum of law seeking an Order from this Honorable Court to equitably toll 42 U.S.C. § 2000e due to extraordinary circumstances that prevented Plaintiff from filing in a timely manner.

**INTRODUCTION**

Defendants employed Ms. Reed as a Relationship Banker at their East Bay Street location from July of 2019 until her retaliatory termination on March 10, 2020. (ECF 1-1, p. 5 Comp ¶ 14). The Defendants promised to pay Ms. Reed merit and incentive pay based upon her sales. (ECF 1-1 p. 6 ¶ 13, 21) Plaintiff relied upon this promise and worked hard to generate business. (ECF 1-1 p. 6 ¶ 23)    Although she was not assigned

any leads or existing accounts, within a short period of time, Ms. Reed generated substantial profits for the Defendants. (ECF 1-1 p. 6 ¶ 17, 18, 24) However, Ms. Reed was not given credit for her sales, instead the credit went to male executives who received additional compensation based upon Ms. Reed's sales. (ECF 1-1 p. 7 ¶ 25) Even though Ms. Reed generated revenue for the Defendants, she was not paid incentive or merit pay as she was promised. (ECF 1-1 p. 7 ¶ 26)

Ms. Reed experienced hostility from her male supervisors because she was bringing in more business than them. (ECF No. 1-1, Amended Comp, ¶ 27, 28). The Defendants told Ms. Reed her success was because she was "flirty" and "cute". (ECF No. 1-1, Amended Comp, ¶ 31) Defendant McAdams told her, "If I was 25 and single, I could be slinging in as much business as you" and "you know how to use what you've got". (ECF No. 1-1, Amended Comp, ¶ 32, 33) Defendant McAdams, who was also Ms. Reed's direct supervisor, told her to "be careful what you say because it makes you sound slutty". *Id*. Additionally, even though he was married, Jonathon Brewer ("Mr. Brewer") the Defendants' Vice President and Credit Manager actively pursue Ms. Reed for a romantic relationship. (ECF No. 1-1, Amended Comp, ¶ 57) Mr. Brewer took Ms. Reed lunch, had gifts shipped to the office and asker her work with him after closing. (ECF No. 1-1, Amended Comp, ¶ 58, 59). The Defendants encouraged Mr. Brewer's behavior. (ECF No. 1-1, Amended Comp, ¶ 60). At some point, Ms. Reed agreed to have a romantic relationship with Mr. Brewer. (ECF No. 1-1, Amended Comp, ¶ 61). When Defendants learned that Ms. Reed was involved with Mr. Brewer, they humiliated and degraded her by requiring her to move out of her office and sit at a desk in the lobby. (ECF No. 1-1, Amended Comp, ¶ 61). They treated her with contempt and began to scrutinize her work. (ECF No. 1-1, Amended Comp, ¶ 81, 82). The Defendants publicly fired Ms. Reed on March 10, 2020.

Ms. Reed initially filed this action in the Court of Common Pleas for the Ninth Judicial Circuit on April 29, 2020. (ECF No. 1-1) Ms. Reed alleged the Defendants violated the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann § 41-10-10, *et seq*. She also brought claims under South Carolina common law for conversion, and promissory estoppel. On May 7, 2020, Ms. Reed filed charges of discrimination, harassment, and retaliation based upon sex against GrandSouth with the Equal Employment Opportunity Commission.[1] ("EEOC") (ECF No 9-2) In footnote 1 of her Complaint, Ms. Reed advised the Court and the Defendants she was going to file a charge of discrimination with the EEOC, and she planned to amend her Complaint when she received her Right to Sue ("RTS") letter. (ECF No 1-1, Complaint p.5, fn. 1) After Plaintiff filed with the EEOC, Defendants filed an Answer and Counterclaim on June 4, 2020. The Defendants brought the following claims against Ms. Reed: Breach of Duty of Loyalty, Conversion/Misappropriation of Confidential Information and violations of the South Carolina Trade Secrets Act. Accordingly, Ms. Reed filed a second charge [2] with the EEOC alleging the Defendants' counterclaims were retaliatory, because Ms. Reed engaged in protected activity by filing a charge of discrimination against the Defendants. Plaintiff filed an Answer to the Counter Claim on June 2, 2020. (ECF No 1-1, Plaintiff's Answer to Counterclaim, p.36-44).

Plaintiff's Counsel contracted COVID in June of 2020 during a deposition. (ECF No 9-6, Mullaney Decl. 1). Luckily, Plaintiff's paralegal did not contract COVID. *Id.* After contracting COVID, Plaintiff's Counsel took extra precautions and worked primarily from home. (ECF No 9-7, Mullaney Decl. 2). Counsel instructed her paralegal to do the same. *Id.* Additionally, Counsel and her paralegal staggered their time in the office to limit their

---

[1] Charge EEOC 415-2020-0880.
[2] Charge EEOC 415-2020-0106.

4

exposure. *Id.* Plaintiff's Counsel received two Right to Sue Letters ("RTS") in Ms. Reed's case. The first was dated September 30, 2020, and the second was dated October 21, 2020. (ECF No 9-6, Mullaney Decl. 1). Plaintiff filed an Amended Complaint on January 20, 2021, adding in her Title VII claims. [3] Because Counsel was working remotely and was not overseeing her one-on-one, she did not know that her paralegal had mistakenly calendared the deadline to file the Amended Complaint 90 days from the second RTS letter instead of 90 days from the first RTS letter. Plaintiff and Plaintiff's Attorney had an honest belief that the date entered by the paralegal accurately represented the filing deadline for Plaintiff's claims. Upon that belief, Plaintiff filed her Title VII claims within the time limit imposed by the Second Letter thinking that it was the time limit for the first RTS. Because Plaintiff's Counsel was working remotely, she was not in her office every day to receive mail and oversee all her paralegal's calendar entries. Counsel hired her paralegal in January of 2020; consequently, Counsel was in the process of training her paralegal when the pandemic hit. [4] (ECF No 9-7, Mullaney Decl. 2).

## ARGUMENT

1. **Plaintiff has set out facts explaining how the COVID-19 pandemic prevented her from timely filing her Amending Complaint as to her First EEOC Charge.**

Title VII provides that a civil action must "be brought" within 90 days of a claimant receiving notice of their right to bring suit on a claim. 42 U.S.C. § 2000e-5(f)(1)

---

[3] Charge EEOC 415-2020-0880 was filed 112 days after receiving the RTS letter. Charge EEOC 415-2020-0106 was filed 91 days after receiving the RTS letter. The Fourth Circuit presume delivery of a Notice of Right to Sue three (3) days after mailing if the date of receipt is unknown. *Dunbar v. Food Lion*, 542 F.Supp.2d 448, 450-451 (D.S.C. 2008). *Baldwin County Welcome Ctr. V. Brown*, 466 U.S. 147, 148, n. 1 (1984) (applying a 3-day rule to Title VII case where date of receipt was not pled); *Johnson v. St. Barnabas Nursing Home*, 368 Fed. Appx. 246, 248 (2d Cir. 2010) ("Absent sufficient evidence to the contrary, it is presumed that a Plaintiff received his or her Right to Sue letter three days after its mailing.").

[4] In November of 2020, Counsel let her paralegal go because the paralegal had made other mistakes and was not able to pick-up the skills to perform the job. (ECF No 9-7, Mullaney Decl. 2).

(2020). As the 90-day filing requirement under 42 U.S.C. § 2000e is not a jurisdictional prerequisite to suit in federal court, but instead is a requirement like a statute of limitations, and is therefore subject to waiver, estoppel, and equitable tolling. *Zipes v. TWA*, 455 U.S. 385, 393. (1982). The "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Id. A court may excuse an untimely filing if it finds "(1) extraordinary circumstances, (2) beyond [Plaintiff's] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (*rehearing en banc*).

Due to the circumstances caused by the pandemic, Plaintiff experienced extraordinary circumstances beyond her control that prevented her from filing on time. When considering whether the pandemic warrants equitable tolling, Courts have required a plaintiff to show how the pandemic prevented the plaintiff from timely filing suit. *Stanley v. Saul*, No. 20-CV-00499-SRB, 2020 U.S. Dist. LEXIS 192748, 2020 WL 6140552, at *4 (W.D. Mo. Oct. 19, 2020). Here Plaintiff has made a showing through a declaration from her Counsel, explaining that after her Counsel contracted COVID, Counsel and her paralegal primarily worked remotely. Furthermore, the paralegal was a relatively new employee and Counsel was not able to oversee the paralegal's activities one-on-one, because she was working remotely and limiting her contact with her paralegal so as not to expose her to COVID.

Courts have applied equitable tolling due to COVID. In *Kumar v. First Abu Dhabi Bank USA N.V.*, Civil Action No. ELH-20-1497, 2020 U.S. Dist. LEXIS 212021, at *14-15 (D. Md. Nov. 13, 2020), the court allowed equitable tolling because the courthouse was open but operating at limited capacity because of the COVID-19 pandemic. "[I]t is

quite likely that that there were delays in accepting and processing mail at the Courthouse at that time, because so many employees were working remotely due to the COVID-19 pandemic and the restrictions at the Courthouse, the pandemic constituted an extraordinary circumstance, beyond plaintiff's control, which impeded his ability to file the Complaint on time."

### 2. The Court should allow equitable tolling because Plaintiff exercised due diligence in preserving her rights.

To invoke equitable tolling, the United States Supreme Court has held that a plaintiff must demonstrate both that extraordinary circumstances prevented them from timely bringing suit and that they were diligent in attempting to timely bring suit. *United States v. Kwai Fun Wong*, 575 U.S. 402, 408, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10, 134 S. Ct. 1224, 188 L. Ed. 2d 200 (2014). Here Plaintiff has diligently exercised her rights. Despite the global pandemic, Ms. Reed filed her charge within 300 days of the discriminatory conduct. Moreover, she filed her SCPWA claim on April 29, 2020 and notified the Court that she planned to file charges of discrimination. In fact, Ms. Reed filed two separate EEOC charges to preserve her claims. Considering the Plaintiff's diligent efforts to preserve her claims, the Court should equitably toll the statute.

### 3.     It would be gross injustice not to allow equitable tolling.

Equitable tolling is "reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and a gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*) (*internal quotation marks omitted*). It would be a gross injustice for the Court to not allow equitable tolling. Plaintiff is only seeking to toll her claims as to EEOC 415-2020-0880 for 19 days. The Defendants were aware, since the

4

filing of her initial Complaint on April 29, 2020, that Plaintiff intended to pursue her Title VII claims.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court allow equitable tolling in this case.

s/Marybeth Mullaney
Marybeth Mullaney (S.C. Bar #6685)
652 Rutledge Ave, Suite A
Charleston, South Carolina 29404
P: (843) 588-5587
marybeth@mullaneylaw.net

*Attorney for Plaintiff*

May 3, 2021
Charleston, South Carolina.

4

7