IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Emily Reed, | Civil Action No. 9:21-00348-MBS-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| GrandSouth Bank, Robert Phillips, Craig McAdams, Alan Uram, | |
| Defendants. | |

Plaintiff, through counsel, filed this employment action in state court on April 29, 2020. (Dkt. No. 1.) Defendants removed the case to federal court on February 4, 2021. (Dkt. No. 1.) Currently before the Court are Motions for Partial Summary Judgment filed by both parties, limited to the issue of whether equitable tolling should apply to excuse the alleged untimely filing of Plaintiff's Title VII claims. (Dkt. Nos. 9; 12.) In their Motion, Defendants also incorporate arguments for the dismissal of certain state law claims that were raised in a prior Motion to Dismiss (Dkt. No. 4).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to the United States Magistrate Judge. For the reasons stated herein, the undersigned recommends that Plaintiff's Title VII retaliation claim was timely filed, that equitable relief be denied as to the Title VII claims for hostile work environment and disparate treatment, and that Plaintiff's state law claims for conversion and promissory estoppel fail as a matter of law. Accordingly, Defendants' Motion for Summary Judgment should be granted in part and denied in part and Plaintiff's Motion for Summary Judgment should be granted in part and denied in part.

1

## BACKGROUND

### A.     Factual Background

Plaintiff was formerly employed by Defendant GrandSouth Bank from July of 2019 "until her retaliatory termination on March 10, 2020." (Dkt. No. 1-1 at 47.) Plaintiff alleges that her "primary duties were to drive sales by creating new deposits and loan opportunities through referrals and outbound calls." (*Id*.) According to Plaintiff, despite generating many accounts that were profitable for Defendants, she was not paid the merit pay she was promised. (*Id*. at 48.) Plaintiff alleges Defendants "took credit and compensation for her sales" and "used [her] sales to reach their quarterly goals." (*Id*. at 49.) Plaintiff alleges that she received Starbucks gift cards instead of the merit increases she was promised in her offer letter. (*Id*.) In December of 2019, Plaintiff "complained to the Defendants that she was not receiving credit for her sales." (*Id*.) Plaintiff was then told she "would receive incentive pay for the referrals that generated business for GrandSouth." (*Id*. at 50.) Plaintiff alleges she "relied upon Defendants' agreement by working very hard generating new business for the bank." (*Id*.) According to Plaintiff, Defendants still failed to pay her the incentives or merit pay that she was owed per her employment agreement. (*Id*.) She further alleges that her last paycheck did not include the vacation time and accrued personal days she had earned pursuant to her employment agreement. (*Id*.)

Plaintiff alleges she was only one of two women employed at GrandSouth and there were not any female managers. (*Id.* at 48.) Plaintiff alleges that "Defendants exhibited a pattern of hostile and sexist behavior towards her" and "told her that her success was because she was 'flirty' and 'cute.'" (*Id*.) Plaintiff alleges her direct supervisor, Defendant Craig McAdams, the Vice-President and Relationship Manager at GrandSouth, made offensive comments towards Plaintiff. (*Id*.) Plaintiff alleges that the Vice President Credit Manager, Jonathan Brewer, "actively pursue[d]

[Plaintiff] for a romantic relationship." (*Id.* at 51.) Plaintiff eventually agreed to have a romantic relationship with Mr. Brewer. Defendant Robert Phillips, the Executive Vice President of GrandSouth, "became very angry with" Plaintiff about this relationship. (*Id.* at 52.) Mr. Phillips told Defendant Alan Uram, the Vice-President of Marketing at GrandSouth, that Plaintiff "was having an intimate relationship with Mr. Brewer." (*Id.*)

Plaintiff alleges she was blamed for the relationship with Mr. Brewer and she was coerced into signing a "prepared statement." (*Id.* at 53–54.) "She was required to sit at a desk in the lobby of the bank." (*Id.* at 54.) Meanwhile, "Mr. Brewer was not required to sign any documents to keep his job nor was he required to move out of his office." (*Id.*) Plaintiff alleges her "work environment became strained and contentious." (*Id.* at 55.) On March 10, 2020, Plaintiff and Mr. Brewer were terminated. Plaintiff was fired in-front of her co-workers and her health insurance was terminated at the end of the month. Mr. Brewer, however, was fired privately outside of the office and was given two additional months of health insurance. While Defendants helped Mr. Brewer secure another position in the banking industry, they spoke poorly about Plaintiff to her next employer. Plaintiff alleges this "resulted in her next employer terminating her when they learned of this lawsuit." (*Id.*)

### B. Procedural History

Plaintiff filed the instant action in state court on April 29, 2020. She originally brought only state law claims for conversion, promissory estoppel, and violation of the South Carolina Payment of Wages Act. However, the complaint noted that Plaintiff filed "Charges of Sex Discrimination, Sexual Harassment, and Retaliation against GrandSouth with Equal Employment Opportunity Commission ("EEOC") and plans to amend this complaint when she receives her Notice of Suits letter from the EEOC." (Dkt. No. 1-1 at 5 n.1.) The EEOC issued Plaintiff a "Right

3

to Sue" letter regarding her Charges of Sex Discrimination and Sexual Harassment on September 30, 2020. (Dkt. No. 9-4.) The letter is postmarked October 2, 2020. (Dkt. No. 6-2 at 1.) Plaintiff's date of receipt of this letter is unknown. (Dkt. Nos. 6 at 3; 9-6 at 3.) The letter stated that any lawsuit arising from Plaintiff's charge must be filed within 90 days of Plaintiff's receipt of the instant notice. (*Id.*) The EEOC issued Plaintiff a "Right to Sue" letter regarding her Charge of Retaliation on October 21, 2020. (Dkt. No. 9-5.) The letter is postmarked October 21, 2020. (Dkt. No. 6-1 at 1.) Plaintiff's date of receipt of this letter is unknown. (Dkt. Nos. 6 at 3; 9-6 at 3.) The letter stated that any lawsuit arising from Plaintiff's charge must be filed within 90 days of Plaintiff's receipt of the instant notice. (*Id.*) On January 20, 2021, Plaintiff filed an Amended Complaint in state court, alleging her original state law claims and adding claims under Title VII for hostile work environment, disparate treatment, and retaliation. (Dkt. No. 1-1 at 44.) The Title VII claims are alleged against Defendant GrandSouth only, while the state law claims are alleged against all Defendants.

Defendants removed this action to federal court on February 4, 2021, and filed a Motion to Dismiss on February 18, 2021. The Motion sought the dismissal of Plaintiff's claims for conversion and promissory estoppel under Rule 12(b)(6) of the Federal Rules of Civil Procedure and sought the dismissal of Plaintiff Title VII claims on the grounds that they were untimely filed. (Dkt. No. 4.) Plaintiff filed a response in opposition to the Motion on March 4, 2021, to which Defendants replied on March 11, 2021. (Dkt. Nos. 4; 6.)

On March 31, 2021, the Court issued an Order finding that the timeliness of the Title VII claims is a threshold issue and more appropriately considered after discovery has been conducted. (Dkt. No. 8.) Accordingly, the Court found the Motion to Dismiss was moot and bifurcated discovery to allow the parties two weeks to engage in discovery limited to the issue of equitable

tolling. (*Id*.) The Court directed the parties to file dispositive motions on this specific issue by May 3, 2021. (*Id*.) Both parties have filed dispositive motions on the issue. (Dkt. Nos. 9; 12.) In their Motion, Defendants also incorporate arguments for the dismissal of certain state law claims that were raised in their prior Motion to Dismiss. (Dkt. No. 4; 9.) Because Defendants' Motion to Dismiss was fully briefed, the undersigned considers the arguments for dismissal of the state law claims, in addition to the issue of equitable tolling.

## STANDARD OF LAW

Courts in this district have found that arguments regarding equitable tolling are appropriate for a Rule 56 motion for summary judgment. S*ee Barnwell v. Magellan Health, Inc*., No. 9:18-CV-2326-RMG-BM, 2019 WL 7938328, at *5 (D.S.C. Oct. 25, 2019) (collecting cases), *adopted by*, 2019 WL 6486799 (D.S.C. Dec. 3, 2019). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

Defendants argue for the dismissal of Plaintiff's claims for conversion and promissory estoppel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion to dismiss

pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

## DISCUSSION

### A.     Title VII Claims

The parties dispute both whether Plaintiff's Title VII claims were timely filed and whether equitable tolling should apply to any claims found untimely.

#### 1.     Timeliness

Under Title VII, a claimant must file a civil action within 90 days of the date of his receipt of a duly issued notice of right to sue from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); *see also Watts–Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) ("Title VII plaintiffs have a ninety-day period in which to file their claims after the EEOC has given them a right-to-sue letter.") (citing 42 U.S.C. § 2000e–5(f)(1)). "When the actual date of plaintiff's receipt

6

of notice is unknown or in dispute, the court presumes receipt three days after mailing." *Dunbar v. Food Lion*, 542 F. Supp. 2d 448, 450–51 (D.S.C. 2008); *see also* Fed. R. Civ. P. 6(d). If suit is not brought within the statutory time period, the case is subject to dismissal. *See Harper v. Burgess*, 701 F.2d 29, 30 (4th Cir. 1983) (affirming dismissal of a lawsuit brought pursuant to Title VII because the plaintiff did not file suit within the 90-day limitation period required by 42 U.S.C. § 2000e-5(f)).

As discussed above, the EEOC issued Plaintiff a "Right to Sue" letter ("RTS") on September 30, 2020, regarding Plaintiff's Charges of Sex Discrimination and Sexual Harassment, and this letter is postmarked October 2, 2020. (Dkt. Nos. 6-2 at 1; 9-4.) Because Plaintiff's date of receipt of this letter is unknown, the undersigned assumes receipt on October 5, 2020, three days after the first RTS letter was mailed. *Dunbar*, 542 F. Supp. 2d at 450–51. The EEOC issued Plaintiff another RTS letter regarding her Charge of Retaliation on October 21, 2020, and this letter is postmarked October 21, 2020. (Dkt. No. 9-5.) Because Plaintiff's date of receipt of this letter is unknown, the undersigned assumes receipt on October 24, 2020, three days after the second RTS letter was mailed. *Dunbar*, 542 F. Supp. 2d at 450–51.

Plaintiff filed her Amended Complaint containing the Title VII claims on January 20, 2021. With respect to the first RTS letter, Plaintiff filed her Amended Complaint 17 days past the 90-day limitation period. As for the second RTS letter, Plaintiff filed her Amended Complaint within the 90-day limitation period. Accordingly, the undersigned recommends that only Plaintiff's claims raised in the first RTS letter were untimely filed; namely, the claims for hostile work environment and disparate treatment. The retaliation claim raised in the second RTS letter was timely filed and should not be dismissed. Accordingly, the Court need only decide whether

7

equitable tolling excuses the untimely filing of the claims for hostile work environment and disparate treatment.

### 2. Equitable Tolling

The 90-day limitations period to file a judicial complaint is subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 439 (1990) (noting that the Supreme Court has interpreted Title VII's requirement that suit be filed within 90 days of receipt of notice of a final administrative decision (or the right-to-sue letter) "to be subject to tolling in appropriate circumstances") (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)); *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006). "Plaintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016). Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc) (internal quotation marks and citation omitted). The plaintiff bears the burden of establishing the elements of equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

In her Motion, Plaintiff argues that "circumstances caused by the pandemic" led to "extraordinary circumstances beyond her control that prevented her from filing on time." (Dkt. No. 12 at 5.) Plaintiff has submitted affidavits from her counsel to support this assertion. (Dkt. Nos. 9-6; 9-7.) Specifically, Plaintiff's counsel avers that she tested positive for COVID on June 26, 2020 and counsel "stayed home and recovered from the virus until July 7, 2020." (Dkt. Nos. 9-6 at 3; 9-7 at 1.) Thereafter, counsel and her paralegal "worked primarily from home" and went

8

"into the office sporadically to check mail." (Dkt. Nos. 9-6 at 3; 9-7 at 2.) The paralegal "mistakenly calendared the deadline to file the Amended Complaint 90 days from the second RTS letter instead of 90 days from the first RTS letter." (Dkt. No. 9-6 at 3.) Counsel attributes this error "to disruptions from COVID" because counsel "was not regularly in the office to receive mail" or "to supervise [her] paralegal." (*Id*.) According to counsel, she hired the paralegal in January of 2020 and tried to give her time to learn. (Dkt. No. 9-7 at 3.) "However, in November [the paralegal] was still making mistakes and was struggling. [Counsel] did not know at that time that she had also made mistakes in this case. [Counsel] learned of that mistake after [counsel] filed the amended complaint in this case." (*Id*.) Counsel terminated the paralegal in November of 2020 "due to mistakes she made that [counsel] felt jeopardized [her] practice." (Dkt. No. 9-7 at 3.)

Here, Plaintiff's reliance on the COVID-19 pandemic to excuse the untimely filing is misguided. While the Court is sympathetic that counsel contracted the virus, she recovered approximately three months before the EEOC issued the RTS letters and approximately six months before the filing deadline of these Title VII claims. Further, while counsel may have reasonably chosen to avoid her office in light of the pandemic and so missed the arrival of the RTS letters, Rule 6(d) of the Federal Rules of Civil Procedure provides an easy method for calculating the filing deadline in such circumstances. This is not a situation where the COVID-19 pandemic caused extraordinary circumstances beyond Plaintiff's control, which impeded her ability to file her Title VII claims on time. *See*, *e.g*., *Kumar v. First Abu Dhabi Bank USA N.V.*, No. CV-ELH-20-1497, 2020 WL 6703002, at *6 (D. Md. Nov. 13, 2020) (applying equitable tolling to alleged untimely filing where plaintiff mailed his complaint to the Courthouse in a timely manner and the COVID-19 pandemic made it "quite likely that there were delays in accepting and processing mail at the Courthouse . . . , because so many employees were working remotely"); *Cummins v. Ascellon*

*Corp.*, No. CV DKC 19-2953, 2020 WL 6544822, at *9 (D. Md. Nov. 6, 2020) (tolling statute of limitations in FLSA action to date on which plaintiff first filed her motion for conditional certification, noting the "filing took place on March 3, 2020, a time when the COVID crisis was both new and reaching a fever pitch").

Finally, there is no basis to find that the paralegal's mistake in calculating the filing deadline warrants equitable tolling. In her affidavit, counsel explains that she terminated the paralegal in November 2020 when counsel realized the paralegal had been making mistakes that "jeopardized [counsel's] practice." (Dkt. No. 9-7 at 3.) Accordingly, counsel had notice of her paralegal's tendency to make significant mistakes approximately two months before the filing deadline in this case. Despite this notice, counsel apparently did not review the deadlines calculated by the paralegal for potential error. The undersigned cannot find that counsel diligently attempted to preserve Plaintiff's claims on such facts. Rather, the excuse offered here, an innocent mistake by the paralegal, and by extension, counsel, has been rejected as a basis for equitable tolling. In *Gayle v United Parcel Service, Inc.,* 401 F.3d 222, 227 (4th Cir. 2005), the Fourth Circuit explained why attorney negligence does not justify equitable tolling:

> Many attorney mistakes are innocent in that they involve oversights or miscalculations attributable in some part to the sheer press of business. To accept such mistakes as a ground for equitable tolling, however, would over time consign filing deadlines and limitations periods to advisory status. The ensuing confusion would contradict our prior observation that equitable tolling requires an "extraordinary circumstance beyond [the plaintiff's] control that prevented him from complying with the statutory time limit." *Harris* [*v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)].

*Id.*

Based on the foregoing, the undersigned recommends that equitable tolling is inappropriate here, and Plaintiff's Title VII claims for hostile work environment and disparate treatment should

be dismissed as untimely. Accordingly, only Plaintiff's Title VII claim for retaliation should proceed.

   **B.**  **State Law Claims**

In addition to Plaintiff's Title VII retaliation claim, Plaintiff also brings state law claims for conversion, promissory estoppel, and violation of the South Carolina Payment of Wages Act. In their Motion for Summary Judgment, Defendants argue for the dismissal of the claims for conversion and promissory estoppel. (Dkt. No. 9-1 at 15–16.) In support, they incorporate arguments for dismissal raised in their prior Motion to Dismiss (*Id*., Dkt. No. 4). The undersigned considers these claims in turn, pursuant to Rule 12(b)(6).

   **1.**  **Conversion**

The Amended Complaint alleges that Defendants committed conversion against Plaintiff "by wrongfully withholding Plaintiff's money from her possession" and "by not surrendering the money upon her request for wages/commissions owed to her." (Dkt. No. 1-1 at 58.) Defendants argue that this claim fails because a conversion claim under South Carolina law cannot arise from failure to pay wages. (Dkt. No. 4-1 at 7–9.)

Under South Carolina law, a conversion is "the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moseley v. Oswalds*, 656 S.E.2d 380, 381 (S.C. 2008) (citing *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 792 (S.C.1990)). Intangible rights are normally not the proper subject for a conversion claim. *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P*, 684 S.E.2d 756, 763 (S.C. 2009). Money may be the subject of conversion when it is "capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *Moore v. Weinberg*, 681 S.E.2d 875, 878 (S.C. 2009). "[T]here can be no conversion where there

is a mere obligation to pay a debt." *Owens v. Zippy Mart of S.C., Inc.*, 234 S.E.2d 217, 218 (S.C. 1977).

"The South Carolina Supreme Court has distinguished mere failure to pay a debt . . . from affirmative misconduct in the failure to pay a debt." *Guill v. Acad. Life Ins. Co.*, 935 F.2d 1286 (4th Cir. 1991); *see also Trevillyan v. APX Alarm Sec. Sys., Inc.*, No. 2:10-cv-1387-MBS, 2011 WL 11611, at *6 (D.S.C. Jan. 3, 2011) ("Conversion consists of conduct more onerous than a simple breach of contract."). Specifically, the South Carolina Supreme Court has clarified that "onerous conduct in refusing to pay money that indisputably belonged to the plaintiff will transform a breach of contract to pay a debt into conversion." *Id*. (citing *Owens*, 234 S.E.2d at 218).

Here, Plaintiff argues that her conversion claim alleges affirmative misconduct, which amounts to more than a mere failure to pay a debt. (Dkt. No. 6 at 13.) In support, Plaintiff cites a recent case from this district, *Hall v. Storm Team Construction, Inc. et. al*., wherein the district court denied the motion to dismiss a conversion claim. No. 6:18-cv-00753-AMQ; Dkt. No. 15 at 11–12. In *Hall*, the complaint alleged, *inter alia*, that Defendants "withheld payments" and "unilaterally changed the Plaintiff's compensation and refused to disclose details of when projects were paid up and what amount of commissions were properly assigned the Plaintiff." (*Id*.) The court found the complaint "appears to allege the subject matter of the conversion claim are wages and commissions." (*Id*.) Recognizing these allegations "are far from robust," the court nevertheless found that the allegations, "if accepted as true, state a claim that is plausible on its face." (*Id*.)

Defendants assert that another case from this district, *Gentry v. Bioverativ U.S. LLC*, No. 2:19-cv-00873-MBS, 2019 WL 3802476, at *8 (D.S.C. Aug. 13, 2019), warrants dismissal here. (Dkt. No. 7 at 8.) Specifically, in *Gentry*, the plaintiff alleged under its conversion claim that

12

"Defendant converted the monies that should have been paid to Plaintiff for its own benefit." 2019 WL 3802476, at *8. The court found that despite this allegation, the claim centered on a failure to pay wages, "which cannot give rise to a conversion claim." *Id.* Similar to *Gentry*, the Amended Complaint here alleges that Defendants improperly benefitted from Plaintiff's sales, stating Defendants "used [Plaintiff's] sales to reach their quarterly goals." (Dkt. No. 1-1 at 49.)

In her response brief, Plaintiff alleges that "Defendants converted to their own use, enjoyment and benefit, certain assets allocated as benefits for the Plaintiff" and they "willfully and wantonly withheld the property to the detriment of the Plaintiff." (Dkt. No. 6 at 14.) Even construing the allegations in the light most favorable to Plaintiff, the undersigned cannot find that Plaintiff has alleged "affirmative misconduct" sufficient to constitute conversion. *See*, *e.g.*, *Burroughs v. Pee Dee Reg'l Transportation Auth.*, No. 4:20-cv-01628-RBH, 2020 WL 5701900, at *4 (D.S.C. Sept. 24, 2020) (dismissing conversion claim where plaintiff alleged defendant "committed conversion in 'wrongfully withholding Plaintiff's money from his possession' and by 'not surrendering the money upon his request for wages owed to him'"); *Flowers v. Premier V.T.L., LLC*, No. 2:18-cv-1279-RMG, 2018 WL 3014820, at *2 (D.S.C. June 15, 2018) (holding "there can be no conversion where there is a mere obligation to pay a debt," and, "[t]hus where there is merely the relationship of debtor and creditor, an action based on conversion of the funds representing the debt is improper" (quoting *Owens*, 234 S.E.2d at 219)); *Glover v. United Parcel Serv., Inc.*, No. 6:16-cv-1985-TMC, 2017 WL 1160420, at *6 (D.S.C. Mar. 29, 2017) ("[T]he failure to pay disputed wages is conduct not sufficiently onerous to constitute a tort of conversion.").

Accordingly, the undersigned recommends the conversion claim be dismissed.

### 2. Promissory Estoppel

In addition to the conversion claim, the Amended Complaint alleges a claim for promissory estoppel. More specifically, the Amended Complaint alleges that "Defendants promised to pay Plaintiff incentive pay for her referrals that generated business for the bank," and that "Plaintiff reasonably relied on the Defendants' promise by spending time generating referrals so that she could receive incentive pay." (Dkt. No. 1-1 at 59.) Plaintiff argues that "the refusal to apply the doctrine of promissory estoppel would result in injustice, because Plaintiff alleged that Defendants took credit for her sales and received bonus and commissions based upon the accounts she brought into the bank." (Dkt. No. 6 at 15.) Defendants contend this claim should be dismissed because: (1) promissory estoppel claims do not apply in the context of an at-will employment relationship; and (2) Plaintiff's allegations fail to sufficiently allege a promissory estoppel claim. (Dkt. No. 4-1 at 10–11.)

> To establish a claim for promissory estoppel, a plaintiff must demonstrate that
>
> (1) a party made a promise unambiguous in its terms; (2) the party to whom the promise is made reasonably relied on the promise; (3) the reliance was expected and foreseeable by the party who made the promise; and (4) the party to whom the promise is made sustained injury in reliance on the promise.

*Stevens & Wilkinson of S. Carolina, Inc. v. City of Columbia*, 721 S.E.2d 455, 460 (Ct. App. 2011), *reh'g denied* (Jan. 27, 2012) (citing *Woods v. State*, 431 S.E.2d 260, 263 (Ct. App. 1993)). "The applicability of the doctrine of promissory estoppel depends on whether the refusal to apply it would virtually sanction the perpetration of fraud or would result in other injustice." *Citizens Bank v. Gregory's Warehouse, Inc.*, 375 S.E.2d 316, 318 (Ct. App. 1988); *Craft v. S. Carolina Comm'n for Blind*, 685 S.E.2d 625, 627 (Ct. App. 2009).

"A determining factor in deciding whether to enforce a promise under the theory of promissory estoppel is the reasonableness of the promisee's reliance." *Storms v. Goodyear Tire &*

*Rubber Co.*, 775 F. Supp. 862, 868 (D.S.C.1991) (finding it was unreasonable, as a matter of law, for at-will employee to rely on employer's policy directives where employee knew he was at-will). "[R]eliance on a promise consisting solely of at-will employment is unreasonable as a matter of law since such a promise creates no enforceable rights in favor of the employee other than the right to collect wages accrued for work performed." *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1219–20 (D.S.C.1992) (granting summary judgment on promissory estoppel cause of action) (citing *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 504 (7th Cir.1992)).

Here, Plaintiff asserts that she is "not alleging her incentive payments were tied to her continued employment, rather she alleged the incentive payments were tied to the accounts she brought into the bank." (Dkt. No. 6 at 15.) According to Plaintiff, she "relied upon the Defendants' promises and brought accounts to the bank only to have the Defendants keep her incentive payments that should have been paid to her." (*Id*.) Plaintiff contends that this "issue is separate from the issue she was terminated over." (*Id*.)

Defendants assert that this type of argument has been rejected by courts in this district. (Dkt. No. 4-1 at 10.) Specifically, in *Gentry*, the court dismissed a promissory estoppel claim based on the defendant's alleged promise of "stock rights to Plaintiff as a benefit of continued employment with Defendant." 2019 WL 3802476, at *6. The *Gentry* court found that even though the plaintiff sought "stock options rather than reinstatement, the court perceives no meaningful difference between the two because Plaintiff's right to those benefits was tied to his continued employment." *Id*. at *7.

Contrary to Plaintiff's assertions, the allegations in the Amended Complaint indicate that the incentive pay at issue was contemplated in her employment agreement and merely an aspect of her at-will employment relationship with GrandSouth. Specifically, the Amended Complaint

alleges that Plaintiff's "employment agreement . . . [included an] opportunity for merit increases based upon her performance." (Dkt. No. 1-1 at 47.) "Plaintiff's primary duties were to drive sales by creating new deposits and loan opportunities through referrals and outbound calls. . . . Within a short period, Plaintiff generated business for GrandSouth by making cold calls and developing customer relationships." (*Id*.) Plaintiff later complained to Defendants that despite her sales efforts which brought in several accounts, "she was not given credit for the sales or paid merit increases as promised." (*Id*. at 49.) Plaintiff then "proposed goal/incentive plan that she provided to Defendant McAdams whereby she would receive merit pay as promised in her offer letter." (*Id*. at 50.) "[T]he CEO . . . approved the incentive plan" and it "was agreed that [Plaintiff] would receive incentive pay for the referrals that generated business for GrandSouth." (*Id*.) Plaintiff alleges that she "relied upon the Defendants' agreement by working very hard generating new business for the bank." (*Id*.) "Despite her requests, Plaintiff's last paycheck did not include the incentive and merit pay she was owed per her employment agreement." (*Id*.)

Given these allegations in the Amended Complaint, it appears the incentive pay at issue was given in exchange for Plaintiff's work performed as an at-will employee. The equitable doctrine of promissory estoppel is inapplicable in such circumstances. *See*, *e.g.*, *Gentry*, 2019 WL 3802476, at *7. (finding promissory estoppel claim is barred in employment context; "In an employment relationship, regardless of whether the terms of employment are reduced to writing, there exists a mutual understanding between employer and employee as to the exchange of payment for work or services rendered."); *White*, 807 F. Supp. At 1219–20 ("Reliance on a promise consisting solely of at-will employment is unreasonable as a matter of law . . . .").

Accordingly, the undersigned recommends Plaintiff's promissory estoppel claim be dismissed.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART (Dkt. No. 9) and Plaintiff's Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART (Dkt. No. 12). Specifically, Plaintiff's Title VII retaliation claim should proceed as timely filed, equitable relief should be denied as to the Title VII claims for hostile work environment and disparate treatment and those claims dismissed, and Plaintiff's state law claims for conversion and promissory estoppel should also be dismissed.

AND IT IS SO RECOMMENDED.

May 13, 2021
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).