IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Emiley Reed, <br><br> Plaintiff, <br><br> v. <br><br> GrandSouth Bank, Robert Phillips, Craig McAdams and Alan Uram individually <br><br> Defendants. | C/A NO: 2:21-cv-00348-MBS-MGB |

### PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION DENYING EQUITABLY TOLLING

Plaintiff Emily Reed, ("Ms. Reed") by and through her undersigned counsel, hereby submits her objections to the Honorable Mary Gordon Baker's Report and Recommendation (ECF No. 13) ("RR") granting in part the Defendants' Motion for Summary Judgement. Specifically, Ms. Reed respectfully objects to the Magistrate's Report denying her request to equitably toll 42 U.S.C. § 2000e for nineteen (19) days. Ms. Reed ask this Court to allow equitable tolling due to extraordinary circumstances caused by COVID, which resulted in her unknowingly amending the complaint to add her Title VII claims for hostile work environment and disparate treatment nineteen days late.[1] For the reasons set forth in the previously filed declarations (ECF No. 9-6, 9-7) as well what is set forth below Plaintiff asks this Court to allow nineteen days of equitable tolling as that her claims for hostile work

---

[1] Ms. Reed's Title VII retaliation claim was timely filed.

environment and disparate treatment can be heard on the merits.

## PROCEDURAL HISTORY

Ms. Reed filed the instant action in state court on April 29, 2020. (ECF No. 1-1 p. 2-35). She brought state law claims for violations of the South Carolina Payment of Wages Act as well as common law claims of for conversion, promissory estoppel. Id.  In her state court complaint, Ms. Reed noted that she filed charges of sexual harassment and discrimination with the EEOC and planned to amend her complaint when she received her Right to Sue letter ("RTS"). (ECF. No. 1-1 at 5 n.1.) On May 7, 2020, Ms. Reed filed her first charge of discrimination with the EEOC alleging Title VII claims for hostile work environment and disparate treatment. (ECF No. 4-2) The Defendants filed their Answer and Counter claim in state court on May 12, 2020. (ECF No. 1-1, p. 13-35). The Defendants brought claims against Ms. Reed for Breach of Duty of Loyalty, Conversion and Misappropriation of Confidential Information, and Violation of Trade Secrets. Id. Ms. Reed filed her Answer to the Counterclaim on June 2, 2020. (ECF No. 1-1) On October 10, 2020, Ms. Reed filed a second charge of discrimination with the EEOC.  In the second charge, Ms. Reed alleged the Defendants' May 12, 2020 counterclaims were retaliatory.  She also alleged the Defendants were speaking badly about her to potential employers, which was damaging her reputation and interfering with her ability to find comparable employment. (ECF No. 4-3).

The EEOC issued Ms. Reed's first RTS regarding her Charges of Sex Discrimination and Sexual Harassment on September 30, 2020. (ECF No. 9-4.) The letter was postmarked October 2, 2020. (ECF. No. 6-2 at 1.) The date of receipt of this letter is unknown because Plaintiff's Counsel, Marybeth Mullaney ("Ms. Mullaney" or "Plaintiff's Counsel") and her newly hired paralegal were working remotely at the time. (ECF. No. 6, Mullaney Decl.) The EEOC issued Ms. Reed's second RTS letter regarding her Charge of Retaliation on October 21, 2020. (ECF. No. 9-5) The letter is postmarked October 21, 2020. The date of receipt of

this letter is unknown because Ms. Mullaney and paralegal were working remotely at the time. Plaintiff filed her Amended Complaint in state court adding the Title VII claims on January 20, 2021. (ECF. No. 1-1) Defendants removed this action to United States District Court for the District of South Carolina on February 4, 2021. (ECF 1) Defendants filed a Motion to Dismiss on February 18, 2021 asking the Court to dismiss Plaintiff's Title VII claims because they were filed untimely. (ECF No. 4) Ms. Reed filed a Reply asking the Court to equitably toll the statute by nineteen days. In the Reply, Plaintiff's Counsel explained how the untimely filing was related to COVID. (ECF No. 7) After asking the parties to engage in further motion practice on the issue, the Magistrate denied Plaintiff's request for equitable tolling. (ECF No. 13). For the reason's set forth below, Ms. Reed respectfully asks this Honorable Court to not adopt the Magistrate's RR as it relates to the failure to recommend equitable tolling by nineteen (19) days.

## **FACTS RELATED TO THE UNTIMELY FILING**

Ms. Mullaney hired a new paralegal in January of 2020. (Mullaney Decl., ECF No. 9-7) Thus, Ms. Mullaney was in the process of training a new paralegal during the pandemic. Additionally, Ms. Mullaney contracted COVID in June of 2020 during a deposition, therefore she closed her office until July 7, 2020. (ECF No 9-6, Mullaney Decl. 1). Luckily, Ms. Mullaney's paralegal did not contract COVID, even though she was present in the office for the deposition. Id. After contracting COVID at the office, Ms. Mullaney took extra precautions and worked primarily from home. Consequently, she would go a week or longer without checking the mail. (ECF No 9-7, Mullaney Decl. 2). Ms. Mullaney also instructed her paralegal to work from home. Id. Moreover, Ms. Mullaney and her paralegal staggered their time in the office to limit their exposure to COVID. Id. Plaintiff's Counsel received two RTS letters on two different dates in Ms. Reed's case. Because Ms. Mullaney and her paralegal were rarely in the office at the same time, Ms. Mullaney did not know that her paralegal had

mistakenly calendared the deadline to file the Amended Complaint to add Plaintiff's Title VII claims 90 days from the second RTS letter instead of 90 days from the first RTS letter. In fact, Ms. Mullaney did not learn of this until the Defendants filed a Motion to Dismiss. Ms. Mullaney had an honest belief that the date entered by the paralegal accurately represented the filing deadline for Plaintiff's claims. Upon that belief, Ms. Mullaney believed she filed Plaintiff's Title VII claims within the time limit imposed by the first RTS letter so it would follow all the Title VII claims were timely followed. Since Ms. Mullaney was working remotely, she was not in her office to regularly receive mail and oversee her new paralegal's calendar entries. If there was not a global pandemic Ms. Mullaney would have been physically present in the office with her new paralegal to review the mail and make sure that the RTS deadlines were calendared appropriately. Due to circumstances caused by the pandemic, Ms. Mullaney's paralegal opened mail when Ms. Mullaney was not physically present in the office. Thus, this error is attributed to the unusual circumstances that Ms. Mullaney and her new paralegal were working under in response to the pandemic.

### **FACTS RELATED TO PLAINTIFF'S CLAIMS**

Defendants employed Ms. Reed as a Relationship Banker at their East Bay Street location from July of 2019 until her retaliatory termination on March 10, 2020. (ECF 1-1, p. 5 Comp ¶ 14). The Defendants promised to pay Ms. Reed merit and incentive pay based upon her sales. (ECF 1-1 p. 6 ¶ 13, 21) Plaintiff relied upon this promise and worked hard to generate business. (ECF 1-1 p. 6 ¶ 23) Although she was not assigned any leads or existing accounts, Ms. Reed generated substantial profits for the Defendants. (ECF 1-1 p. 6 ¶ 17, 18, 24) Ms. Reed was not given credit for her sales, instead the credit went to male executives who received additional compensation based upon her sales. (ECF 1-1 p. 7 ¶ 25) Even though Ms. Reed generated revenue for the Defendants, she was not paid incentives or merit pay as she was promised in her employment agreement. (ECF 1-1 p. 7 ¶ 26).

Ms. Reed experienced hostility because she was generating more leads than her male supervisors. (ECF No. 1-1, Amended Comp, ¶ 27, 28). The Defendants told Ms. Reed her success was because she was "flirty" and "cute". (ECF No. 1-1, Amended Comp, ¶ 31). Defendant McAdams told her, "if I was 25 years old and single, I could be slinging in as much business as you" and "you know how to use what you've got". (ECF No. 1-1, Amended Comp, ¶ 32, 33). On one occasion, Ms. Reed's direct supervisor, Defendant McAdams advised her to "be careful what you say because it makes you sound slutty". Id. Jonathon Brewer ("Mr. Brewer") who was a married man and the Defendants' Vice President Credit Manager actively pursue Ms. Reed for a romantic relationship. (ECF No. 1-1, Amended Comp, ¶ 57) He took her lunch, asked her to after hours with him and had gifts shipped to the office. (ECF No. 1-1, Amended Comp, ¶ 58, 59). The Defendants encouraged Mr. Brewer's behavior. (ECF No. 1-1, Amended Comp, ¶ 60). At some point, Ms. Reed agreed to have a romantic relationship with Mr. Brewer. (ECF No. 1-1, Amended Comp, ¶ 61). When Defendants learned that Ms. Reed was involved with Mr. Brewer they humiliated and degraded her by requiring her to move out of her office and sit at a desk in the lobby. (ECF No. 1-1, Amended Comp, ¶ 61).  They treated her with contempt and disgust and began to scrutinize her work. (ECF No. 1-1, Amended Comp, ¶ 81, 82). The Defendants publicly fired Ms. Reed on March 10, 2020. Moreover, upon information and belief, the Defendants spoke poorly about Ms. Reed after they terminated, damaging her reputation and making it difficult for her to find comparable employment.

## **STANDARD**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, and in accordance with 28 U.S.C. § 636, a magistrate judge may hear and decide "a pretrial matter not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). Rule 72(a) provides that a dissatisfied party may file objections to the magistrate judge's order within fourteen days

after being served with a copy of the order. Id. Upon receipt of timely filed objections, "[t]he district judge in the case must consider [the] objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). "[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure*." King v. Marriott Intern., Inc.*, C.A. No. 9:05-1774-PMD-RSC, 2006 U.S. Dist. LEXIS 51652, 2006 WL 2092592, at 3 (D.S.C. July 26, 2006).

## ARGUMENT

**The Magistrate erred in finding that equitable tolling does not apply to Plaintiff's case**

The equitable tolling sought herein is an acknowledged remedy. See *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 439 (1990) (noting that the Supreme Court has interpreted Title VII's requirement that suit be filed within 90 days of receipt of notice of a final administrative decision (or the right-to-sue letter) "to be subject to tolling in appropriate circumstances") (*citing Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)); *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006). Plaintiffs are entitled to equitable tolling if they show they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time. *Raplee v. United States,* 842 F.3d 328, 333 (4th Cir. 2016).  In the RR, the Magistrate concludes that equitable tolling is inapplicable to Plaintiff's case. (ECF No 13 p.9). Ms. Reed respectfully asks this Court to permit equitable tolling in this case, because she has diligently pursued her rights and the untimely filing would not have occurred but for the specific impact of the global pandemic.

District Courts across the United States have allowed equitable tolling in acknowledgement of the extreme disruption and disadvantage to plaintiffs resulting from the Covid-19 Pandemic. A District Court in North Carolina held, "[t]he Court cannot conceive of more extraordinary circumstances than the COVID-19 pandemic". Indeed, district courts in the Fourth Circuit as well as across the country have exercised their discretion to apply equitable tolling to extend statutes of limitations and time limits in cases impacted by the COVID-19 pandemic. *See. e.g*. *Moore v. City of Charlotte, No*. 3:20CV525-GCM, 2021 WL 698150, at 3 (W.D.N.C. Feb. 22, 2021). Admittedly, a vague, general invocation of the pandemic is insufficient and plaintiffs must set out specific facts explaining how the pandemic prevented timely filing. *Gerald v. Olsten*, No. 4:20-cv-2555-CMC-KDW, 2021 U.S. Dist. LEXIS 49041, at 15-16 (D.S.C. Feb. 9, 2021); *See also*, *Willard v. Indus. Air, Inc*., Civ. No. TDS-20-0823, 2021 U.S. Dist. LEXIS 17216, 2021 WL 309116, at 4 (M.D.N.C. Jan. 29, 2021). However, Ms. Reed has set forth specific facts explaining how the pandemic prevented her from timely filing; therefore, equitable tolling is warranted given the circumstances present here.

In support of the determination that equitable tolling is inapplicable to Ms. Reed's case, the Magistrate pointed to three cases. First, the Magistrate cites *Kumar v. First Abu Dhabi Bank USA N.V*. CV-ELH20-1497, 2020 WL 6703002, (D. Md. Nov. 13, 2020 and *Cummins v. Ascellon Corp* No. CV DKC 19-2953, 2020 WL 6544822, (D. Md. Nov. 6, 2020) in support of the RR stating "[t]his is not a situation where the COVID-19 pandemic caused extraordinary circumstances beyond Plaintiff's control, which impeded her ability to file her Title VII claims on time." (ECF No 13 p. 9).  Plaintiff respectfully disagrees. Second, the Magistrate cites *Gayle v United Parcel Service, Inc*. 401 F.3d 222, (4th Cir. 2005) in concluding that "there is no basis to find that the paralegal's mistake in calculating the filing deadline warrants equitable tolling." (ECF No 13 p.10). The cited cases present very different

facts than the ones presented in this case; therefore, Plaintiff believes equitable tolling is warranted under these circumstances.

In *Kumar v. First Abu Dhabi Bank USA N.V., No*. CV-ELH20-1497, 2020 WL 6703002, (D. Md. Nov. 13, 2020), the defendant argued plaintiff's claims were time-barred because he failed to file suit within 90 days of receipt of the RTS letter. The plaintiff mailed his complaint when the courthouse was open but operating at limited capacity due to the COVID-19 pandemic. The defendants in *Kumar* argued equitable tolling did not apply to the late filing because, although physical access to the courthouse was restricted, the courthouse remained open for filings, and a drop box was provided for non-represented litigants. Despite these accommodations, the court in *Kumar* allowed for equitable tolling, reasoning that "it is quite likely that there were delays in accepting and processing mail at the Courthouse at that time, because so many employees were working remotely." Id. Additionally, the Court stated that "[i]n any event, and alternatively, due to the COVID-19 pandemic and the restrictions at the courthouse, the pandemic constituted an extraordinary circumstance, beyond plaintiff's control, which impeded his ability to file the Complaint on time. Therefore, the time bar does not warrant dismissal of the suit." Id. Contrary to the Magistrate's claim otherwise, Plaintiff believes the facts of her case are similar to those presented in *Kumar* in that she was impacted by circumstances beyond her control and is she only seeking  and thus her request for nineteen (19) days of equitable tolling should be granted.

In *Cummins v. Ascellon Corp*., No. CV DKC 19-2953, 2020 WL 6544822, (D. Md. Nov. 6, 2020), the Court allowed for the tolling statute of limitations in FLSA action. The *Cummins* court stated that "it is hard to imagine a more "extraordinary" event than COVID-19." Id. at 30. At the end of the opinion, the Court notes that "[t]he filing took place on March 3, 2020, a time when the COVID crisis was both new and reaching a fever pitch."  Based on the plain language and structure of the opinion, the *Cummins* court's granting of equitable

tolling was based on the disruption caused by the pandemic, not the specific timing. While there was certainly a higher level of disruption at the beginning of the pandemic, the court places no temporal limit on what COVID related disruption qualifies as an extraordinary circumstance.

The Magistrate relies upon *Gayle v United Parcel Service, Inc*., 401 F.3d 222 (4th Cir. 2005) to deny Plaintiff's motion because the Fourth Circuit declined to apply the doctrine of equitable tolling to an untimely filing holding that "attorney negligence does not justify equitable tolling." *Id*. at 227. The present case is easily distinguishable from *Gayle* given that circumstances in *Gayle* were not caused by COVID. Moreover, the present case was not a just a simple instance of negligence but rather a mistake that during in an attempt to preserve Plaintiff's rights amid a global pandemic. Here the error occurred as a direct result of the circumstances forced upon the law firm due to the pandemic. Due to the pandemic, federal, state and local governments have urged businesses to allow employees to work remotely and to "[c]onsider alternate work schedules such as staggering start times or shifts for employees who are onsite."[2] Accordingly, Plaintiff's attorney shifted to a remote operation of her law firm and staggered the times when she and her paralegal were in the office for the safety of her paralegal and the safety of the larger community. This shift from operating out of an office to working from home, attending proceedings virtually and managing employees remotely has presented a once in a century difficulty, not only for the Plaintiff's attorney, but for all businesses, institutions and individuals worldwide. In the absence of the challenges this pandemic has presented for the plaintiff's attorney in operating her firm, the error presently under discussion would not have occurred.

---

[2] *See*. DHEC Employer Return to Work Guidance, SCDHEC, https://scdhec.gov/sites/default/files/media/document/DHEC%20Employer%20Return%20to%20Work%20Guidance_5.5.20.pdf; *See also* Workplaces and Businesses Plan, Prepare, and Respond, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html

Additionally, Plaintiff's case is easily distinguishable from cases where district courts have found equitable tolling to be inapplicable. In *Gerald v. Olsten*, No. 4:20-cv-2555-CMC-KDW, 2021 U.S. Dist. LEXIS 49041 (D.S.C. Feb. 9, 2021) the court denied application of equitable tolling because, "[p]laintiff has provided no evidence or argument unique to her own situation," the court found the plaintiff's vague references to the pandemic to be "unavailing." Id. In *Treadwell v. Sunbelt Rentals*, Civil Action No. CCB-20-1514, 2021 U.S. Dist. LEXIS 89208, at 2-3 (D. Md. May 11, 2021), the plaintiff argued that "Maryland's stay-at-home orders relating to the coronavirus pandemic, in effect after he received his right to sue letter, prohibited him from filing his complaint at the courthouse." The court found this argument unpersuasive as "those orders permitted residents to leave their homes for certain essential activities, including to travel to a federal government building for a necessary purpose." Id. In *Willard v. Indus. Air, No*. 1:20-CV-00823, 2021 U.S. Dist. LEXIS 17216, at 12-14 (M.D.N.C. Jan. 29, 2021)., the plaintiff's argument for equitable tolling relied on "chaos created by the pandemic" but failed to show how the pandemic prevented him from timely filing suit. Accordingly, the court held that "*Willard* has failed to demonstrate that he exercised due diligence in pursuing his rights." Id at 14. In *Sampat v. Kansas*, No. 20-4070-JWB, 2021 U.S. Dist. LEXIS 95829, at 8 (D. Kan. May 20, 2021) the plaintiff's complaint was filed more than six months beyond the filing deadline and the plaintiff argued "that he was lulled into inaction by stay-at-home orders." The court held that "[a]lthough the COVID-19 pandemic has presented many difficulties to many individuals, plaintiff's argument is not sufficient to persuade the court that the deadline should be tolled for more than six months." *Id* at 9. Unlike those cases, Ms. Reed is not making the broad generalized claim that the mere occurrence of the pandemic justifies equitable tolling. Rather, Ms. Reed has presented with specificity the ways in which the pandemic caused the untimely filing to occur. Moreover, Ms. Reed is only requesting tolling for nineteen (19) days not for 6 months.

In her initial complaint, Ms. Reed put the Defendants on notice that she was pursuing claims under Title VII and was planning on amending her complaint when she received her RTS letter. Consequently, Defendants, unlike Ms. Reed will suffer great prejudice if these claims are dismissed, particularly when that dismissal is due to a mechanical rule and not on the merit of the claims. Courts must often "exercise [their] equity powers ... on a case-by-case basis," *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S. Ct. 1316 demonstrating "flexibility" and avoiding "mechanical rules," *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582, to "relieve hardships ... aris[ing] from a hard and fast adherence" to more absolute legal rules, *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238, 248, 64 S.Ct. 997. *Holland*, 130 S. Ct. 2549, 2553 (2010). We respectfully ask this Honorable Court not to dismiss Ms. Reed sexual harassment and disparate treatment claims and to allow her the opportunity to proceed on the merits of those claims.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court allow equitable tolling for nineteen days in this case.

Respectfully Submitted,

s/Marybeth Mullaney
Marybeth Mullaney (Fed Id. 11165)
652 Rutledge Ave, Suite A
Charleston, South Carolina 29403
P: (843) 588-5587
marybeth@mullaneylaw.net

*Attorney for Plaintiff*

May 27, 2021
Charleston, South Carolina